UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SHANTAE N.,

                                  Plaintiff,

v.                                                   6:24-cv-00839
                                                              (BKS/TWD)

COMMISSIONER OF SOCIAL SECURITY,

                                  Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| OLINSKY LAW GROUP<br>250 South Clinton Street, Suite 210<br>Syracuse, NY 13202<br>*Counsel for Plaintiff* | HOWARD D. OLINSKY, ESQ. |
| SOCIAL SECURITY ADMINISTRATION<br>Office of Program Litigation, Office 2<br>6401 Security Boulevard<br>Baltimore, MD 21235<br>*Counsel for Defendant* | CANDACE BROWN CASEY, ESQ. |

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

**REPORT AND RECOMMENDATION**

**I.    INTRODUCTION**

      Plaintiff Shantae N. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security ("Defendant" or "Commissioner") denying her application for benefits. Dkt. No. 1. Plaintiff did not consent to the jurisdiction of a Magistrate Judge. Dkt. No. 4. The matter was referred to the undersigned for a Report and Recommendation by the Hon. Brenda K. Sannes, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d).

This case has proceeded in accordance with General Order 18, which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties filed briefs, which the Court treats as motions under Federal Rule of Civil Procedure 12(c). Dkt. Nos. 9, 13. Plaintiff also filed a reply brief. Dkt. No. 16. Oral argument was not heard. For the following reasons, the Court recommends Plaintiff's motion be granted, Defendant's motion be denied, and the Commissioner's determination be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## II. BACKGROUND

Plaintiff was born in 1987. T. 21.[1] She completed high school, T. 66, and one year of college. T. 358. She obtained a cosmetology license in 2016. *Id*. On August 5, 2021, Plaintiff filed an application for Title II Social Security Disability Insurance Benefits and an application for Title XVI Supplemental Security Income alleging disability beginning November 1, 2020. T. 50, 58, 318, 326. She alleged disability due to epilepsy and ankle pins/rods/screws. T. 357. The applications were denied on October 7, 2021, and on reconsideration on May 26, 2022. T. 66-67, 100-01. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on July 28, 2023, before ALJ Robyn L. Hoffman but Plaintiff did not appear for the hearing. T. 44-49. On September 28, 2023, ALJ Hoffman issued an unfavorable decision. *Id*. at 11-23. On May 23, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final determination of the Commissioner. T. 1-7. Plaintiff timely commenced this action on July 3, 2024. Dkt. No. 1.

---

[1] The Administrative Record/Transcript is found at Dkt. No. 8. Citations to the Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers the Court's CM/ECF electronic filing system assigns. The Court's citations to the parties' briefs, however, will refer to the pagination generated by CM/ECF at the header of each page, not to the pagination of the individual documents.

2

### III.   LEGAL STANDARDS

#### A.   Standard for Benefits

To be considered disabled, a plaintiff seeking disability benefits must establish he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).[2]  Additionally, the claimant's:

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 423(d)(2)(A).

The Social Security Administration ("SSA") regulations outline a five-step process to determine whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

---

[2] While the SSI program has special economic eligibility requirements, the requirements for establishing disability under SSI, Title XVI, 42 U.S.C. § 182c(a)(3) and SSDB, Title II, 42 U.S.C. § 423(d), are identical, therefore, "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Dep't of Health & Hum. Servs. of U.S.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)). The claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). If the claimant meets his or her burden of proof, the burden shifts to the Commissioner at the fifth step to prove the claimant is capable of working. *Id*.

B.  **Standard of Review**

In reviewing a final decision of the Commissioner, a court must first determine whether the correct legal standards were applied, and if so, whether substantial evidence supports the decision. *Atwater v. Astrue*, 512 F. App'x 67, 69 (2d Cir. 2013). "Failure to apply the correct legal standards is grounds for reversal." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks and citation omitted). Therefore, a reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986-87 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020) (internal quotation marks and citation omitted). If the ALJ's finding as to any fact is supported by substantial evidence, it is conclusive. 42 U.S.C. § 405(g); *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995). Further, where evidence is deemed susceptible to more than one

rational interpretation, the ALJ's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on Behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)) (additional citation omitted). If supported by substantial evidence, the Commissioner's findings must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford* 685 F.2d at 62) (additional citations omitted). A reviewing court cannot substitute its interpretation of the administrative record in place of the Commissioner's if the record contains substantial support for the ALJ's decision. *See Rutherford*, 685 F.2d at 62.

When inadequacies in the ALJ's decision frustrate meaningful review of the substantial evidence inquiry, remand may be appropriate. *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019); *Pratts v. Chater*, 94 F.3d, 34, 39 (2d Cir. 1996). Remand may also be appropriate where the ALJ has failed to develop the record, adequately appraise the weight or persuasive value of witness testimony or explain his reasonings. *See Klemens v. Berryhill*, 703 F. App'x 35, 35-38 (2d Cir. 2017); *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999); *Estrella*, 925 F.3d at 98; *Burgess*, 537 F.3d at 130; *Pratts*, 94 F.3d at 39.

## IV. THE ALJ'S DECISION

The ALJ issued her decision on September 28, 2023.  T. 11-23.  Applying the five-step disability sequential evaluation, the ALJ first determined Plaintiff had not engaged in substantial gainful activity since November 1, 2020, her alleged onset date.  T. 14.  At step two, the ALJ found Plaintiff had the following severe impairment: epilepsy.  *Id*.  Proceeding to step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1 ("Listing" or "Listings"), specifically considering Listing 11.02 (epilepsy).  T. 15.

The ALJ next concluded Plaintiff has the residual functional capacity ("RFC") to perform light work as follows:

> [Plaintiff] can lift and carry twenty pounds occasionally and ten pounds frequently, sit for six hours, and stand and/or walk for six hours, all in an eight-hour workday with normal breaks.  She should avoid working at unprotected heights; climbing ladders, ropes, or scaffolds; and working in close proximity to dangerous machinery or moving mechanical parts of equipment.  [Plaintiff] can occasionally climb ramps or stairs and can frequently balance, stoop, kneel, crouch, and crawl.

T. 15.  At step four, the ALJ determined that a finding regarding Plaintiff's capacity for past relevant work was not material.  T. 20.  At step five, the ALJ determined, based on her age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy Plaintiff could perform.  T. 21.  Accordingly, the ALJ concluded Plaintiff was not disabled.  T. 23.

## V. THE PARTIES' CONTENTIONS

Plaintiff argues the ALJ improperly failed to find her right ankle impairment severe at the step two analysis, asserting her right ankle significantly limits her ability to perform basic work

6

activities. Dkt. No. 9 at 9-16. According to Plaintiff, this error requires remand because it precludes meaningful review. *See generally id.*; *see also* Dkt. No. 16.

The Commissioner responds contending substantial evidence supports the ALJ's finding that Plaintiff's right ankle impairment was non-severe concluding remand is not required and the ALJ's decision should be affirmed. Dkt. No. 13 at 5-14.

## VI.   DISCUSSION

### A.   Step Two – Severity Determination

At step two of the disability analysis, the ALJ determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). The Commissioner's Regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing, hearing, and speaking"; "[u]nderstanding, carrying out, and remembering simple instructions"; "[u]se of judgment"; "[r]esponding appropriately to supervision, co-workers and usual work situations"; and "[d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1522(b).

"The claimant bears the burden of presenting evidence establishing severity." *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012), *adopted*, 32 F. Supp. 3d 253 (N.D.N.Y. 2012). Step two's "severity" requirement is *de minimis* and is meant only to screen out the weakest of claims. *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995); *see also Melendez v. Comm'r of Soc. Sec.*, No. 17-CV-299-FPG, 2020 WL 4274510, at *2 (W.D.N.Y. July 24, 2020) ("[T]he analysis at step two is a threshold test designed to screen out *de minimis* or totally groundless claims) (citations omitted). However, despite this lenient standard, the "'mere presence of a

7

disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.'" *Taylor*, 32 F. Supp. 3d at 265 (quoting *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)). Rather, "to be considered severe, an impairment or combination of impairments must cause 'more than minimal limitations in [a claimant's] ability to perform work-related functions.'" *Windom v. Berryhill*, No. 6:17-cv-06720-MAT, 2018 WL 4960491, at *3 (W.D.N.Y. Oct. 14, 2018) (alteration in original) (quoting *Donahue v. Colvin*, No. 6:17-CV-06838 (MAT), 2018 WL 2354986, at *5 (W.D.N.Y. May 24, 2018)). In other words, the claimant must demonstrate "that the impairment has caused functional limitations that precluded [her] from engaging in any substantial gainful activity for one year or more." *Perez v. Astrue*, 907 F. Supp. 2d 266, 272 (N.D.N.Y. 2012) (citing *Rivera v. Harris*, 623 F.2d 212, 215 (2d Cir. 1980)).

      **B.**     **The ALJ's Step Two Analysis**

In her step two analysis, the ALJ determined Plaintiff's epilepsy was a severe impairment. T. 14. However, the ALJ continued noting "[t]he medical record does not support a finding of additional 'severe' impairments. There is evidence that the claimant also has a history of . . . multiple conditions affecting her right ankle and foot, including degenerative joint disease, equinus contracture of the right ankle, and tarsal coalition and congenital pes planus of the right foot." *Id.* The ALJ continued that Plaintiff's right ankle and foot condition, among other non-severe conditions, has "either resolved, required little or no treatment, or been adequately controlled with treatment, and none have imposed more than minimal limitations on the claimant's ability to perform basic work activities for a continuous period of at least twelve months." *Id.* When finding Plaintiff's right ankle and foot conditions non-severe, the ALJ reasoned:

> As for the right ankle, the claimant began to complain of increased right foot pain in November 2022. The claimant explained to the podiatrist that she was born with a deformity and had a similar surgery on her left foot when she was 18 and was told she would likely need surgery on her right as well. She explained that as a hairstylist, she was on her feet all day. The claimant underwent surgery in March 2023. Treatment notes reflect that claimant recovered during a typical expected period. The condition is deemed to be non-severe insofar as this is an impairment that the claimant dealt with for some time and was able to work at substantial gainful activity levels without issue. At the point when her pain was increasing, she sought treatment and received surgery for which she recovered within twelve months. As such, the conditions related to her foot and ankle, including tarsal coalition of the right foot, degenerative joint disease of the right ankle and foot, and equinus contracture of the right ankle, and congenital pes planus of the right foot, are not severe.

T. 15 (citing generally T. 932-1056). Later in her decision, the ALJ further stated:

> As discussed, the claimant's right ankle impairment is longstanding and did not prevent her from working full time as a cleaner, hairdresser, and retail manager; positions that would have required her to spend most, if not all, of her workday on her feet. I also note that the claimant did not complain to her own medical sources of worsening symptoms until June 2022 and was noted to be recovering as expected from corrective surgery less than a year later. It is for these reasons that I find the claimant's right ankle impairment "non-severe."

T. 17 (citing T. 356-62).

However, this finding is at odds with the medical records. For example, the records show Plaintiff complained of right ankle pain as far back as January 18, 2022, to her primary care providers and she was counseled to exercise and lose weight. T. 779. At the next office visit on April 22, 2022, she had actually gained 11 pounds, and again she was "[c]ounseled extensively on diet, exercise, and calorie restriction" and it was noted that she "has plans to go to the gym regularly." T. 804. Notably, the records are unclear as to whether Plaintiff ever actually

9

followed through on those plans. *See generally* T. 678-715, 777-83, 796-807, 932-1056 (records from her primary care providers at Slocum Dickson Medical Group ("SDMG")).

While treating with her primary care providers at SDMG on June 9, 2022, Plaintiff's "chief complaint" was right ankle pain and instability. T. 796. This was noted to be a "chronic issue." *Id.* "The pain is worse with standing and it often swells up at the end of the day." *Id.* On exam, there was tenderness to palpation and pain with inversion of the right foot. T. 798. While her gait and strength were normal, she had mild swelling of her right ankle. *Id.* She was encouraged to wear an ACE wrap during the day at work. T. 796. Of note, there is no indication Plaintiff was working at substantial gainful employment at that time, and indeed the ALJ found Plaintiff had not engaged in substantial gainful activity since November 1, 2020. T. 14.

In August of 2022, her right ankle was unstable, the pain was "chronic," and she was referred to follow up with another provider at SDMG, Kimberly Hurley, D.P.M., for evaluation. T. 1023. She was using a gel for the pain which was helping. *Id.* While the note indicates "[s]he continues to walk regularly and can tolerate this," there is absolutely no indication of how far she walked and for how long she walked. T. 1026; *see also id.* 1023-26. In September of 2022, she again complained of foot and ankle pain on the right, and one of her diagnoses was listed as "chronic pain of the right ankle." T. 1011, 1012. In the history part of the note, it indicates she "continues to workout but weight has not changed" and the gel for her ankle "has been helpful." T. 1011. Still, there is no indication of what is meant by any "workout" or to what extent Plaintiff engaged in any workouts. T. 1011-14. In October of 2022, Plaintiff continued to complain of chronic right ankle pain, she continued to use the gel, and her foot pain was causing hip pain. T. 1006. The note indicates she will follow with podiatry for the foot and ankle pain. T. 1009.

On November 7, 2022, Plaintiff was seen by podiatrist Dr. Hurley who noted Plaintiff "failed conservative treatment with bracing, inserts and [non-steroid anti-inflammatory drugs]." T. 987. Dr. Hurley diagnosed Plaintiff with degenerative joint disease of the right foot and ankle, tarsal coalition of the right foot, and equinus contracture of the right ankle. *Id.* The note indicates "she works as a hairstylist, is on her feet all day." T. 988. Again, however, there is no indication that this work was done at the level of substantial gainful employment. *Id.* Dr. Hurley recommended surgery and Plaintiff indicated she wanted to proceed with the surgery. T. 987.

Follow up notes indicate Plaintiff's foot and ankle pain continued, and surgery was performed on March 24, 2023, by Dr. Hurley. T. 840-42 (operative note); *see also* T. 943-45, 951, 970-73, 976, 983, 984, 986. The procedure involved "right foot medial double arthrodesis (fusion of navicular cuneiform and calcaneal cuboid joint) with screw fixation and bone grafting [and] percutaneous Achilles tendon lengthening." T. 840. She was discharged with "strict nonweightbearing to the right foot" and with instructions to follow up with Dr. Hurley in two weeks. T. 842. On March 31, 2023, Dr. Hurley continued Plaintiff with strict non-weightbearing in a posterior splint. T. 940. On April 10, 2023, Plaintiff's stitches were removed, she was placed in a well-padded below the knee cast, and she was continued on non-weightbearing status. T. 938. In the last note from Dr. Hurley in the record dated May 10, 2023, Plaintiff was six weeks post-op with a clean, dry, and intact cast. T. 936. The hardware was intact, but the bone was not fully healed and was without complete osseus fusion at that time. T. 937. Dr. Hurley recommended partial weightbearing in a "CAM boot with crutch assist." *Id.* In other words, it appears Plaintiff was not yet fully healed from the surgery.

Other records from SDMG before January of 2022 do not mention any ankle issues, but Plaintiff was largely followed for her seizure disorder at that time. T. 630-77. In neurological

11

exams, on May 7, 2021, and September 15, 2021, no ankle power was tested, and no Achilles reflexes were tested. T. 638, 656. On April 1, 2018, her occupation was listed as hairdresser, T. 669, but on August 10, 2021, it was noted she was not working. T. 648. This is consistent with her reports that she worked full time as a hairdresser from November 2017 to October 2019, but she did not work full time after November 2020 in any capacity. T. 358. This is also consistent with records from Rome Neurology dated April 28, 2022, October 28, 2022, and April 28, 2023, all of which indicate "[s]he does not work." T. 809, 820, 857. Interestingly, and somewhat incongruous to Dr. Hurley's post-surgery April 10, 2023, note indicating Plaintiff was in a well-padded cast, and continued on non-weightbearing status, the neurology exam of Glady Jacob, M.D., dated April 28, 2023, also post-surgery, is word-for-word identical as the exam Dr. Jacob did before the surgery on October 28, 2022. *Compare* T. 820 *with* T. 858; *see also* T. 938. Although Plaintiff was still in a cast and non-weightbearing on April 28, 2023, *see* T. 938, Dr. Glady found her gait normal, T. 858, and yet Plaintiff was still only partial weightbearing and in a CAM boot with use of crutches on May 10, 2023. T. 937.

Plaintiff was examined by consultant John Fkiaras, M.D., on April 18, 2022, more than one year before the last treatment note from Dr. Hurley after the right ankle surgery, and almost a year before the surgery was performed by Dr. Hurley. T. 785-89; *see also* T. 840-42, 936-37. At the time of Dr. Fkiaras' exam, Plaintiff complained of pain 10/10 in the right ankle "described as a never-ending shock." T. 785. On exam, she exhibited an antalgic gait with and without a cane; she was unable to walk on heels and toes; and she could only squat 1/5 of the way going down. T. 787. Dr. Fkiaras noted her "[c]ooperation and effort were good." *Id.* Dr. Fkiaras found Plaintiff to have reduced right ankle dorsiflexion of 12 degrees and reduced plantar flexion of 10 degrees. T. 788. A right ankle x-ray revealed talar beaking. T. 790. In his source

12

statement, Dr. Fkiaras opined Plaintiff had moderate to marked limitations in walking, climbing stairs, standing for extended periods, and any repetitive heavy lifting, carrying, pushing or pulling. T. 788-89. Dr. Fkiaras opined Plaintiff had marked limitations in squatting, kneeling, crouching, driving, and operating machinery. T. 789. The ALJ did not find Dr. Fkiaras' opinion persuasive and discounted it as inconsistent with other medical opinions of record, including the degree of limitations proposed by Dr. Fkiaras. T. 18.

One of those other opinions, by which the ALJ was more persuaded, included non-examining state agency record reviewer D. Brauer, M.D. T. 18, 19. Despite noting Dr. Fkiaras' findings on exam, including the decreased dorsiflexion and plantar flexion in Plaintiff's right ankle, her inability to walk on heels and toes, and her ability to only squat 1/5, T. 79-80, and noting Dr. Fkiaras' report was "consistent with treatment records," T. 76, Dr. Brauer opined Plaintiff could stand and/or walk and sit about six hours in an eight-hour workday. T. 77. For support, Dr. Brauer noted Plaintiff used a cane, had an antalgic gait, had balance issues, and had decreased range of motion in her knees and ankles at the consultative exam performed by Dr. Fkiaras. *Id.* The ALJ explained she found Dr. Brauer's opinion was supported by the narrative analysis of the evidence which included Dr. Fkiaras' reported findings. T. 19. However, the ALJ did not explain how she determined the moderate to marked limitations opined by Dr. Fkiaras, and by reference by Dr. Brauer, were consistent with the assessed RFC for standing and walking. T. 18-19. While "a moderate to marked limitation does not necessarily preclude the performance of light work," it is incumbent on the ALJ to provide some explanation for how she determined that a moderate to marked limitation was consistent with the assessed RFC. *Jeffery A. v. Comm'r of Soc. Sec.*, No. 3:18-CV-1473 (CFH), 2020 WL 1234867, at *9 (N.D.N.Y. Mar. 13, 2020) (other citation omitted). The ALJ did not do that here.

13

Further, the medical source statement from Physician Assistant ("PA") Allisa Tucciarone, which the ALJ found partially persuasive, T. 19, indicates diagnoses of seizures and migraines. T. 1057. While she opined Plaintiff could stand/walk six hours in an eight-hour workday, T. 1058, a finding accepted by the ALJ and incorporated into the RFC, PA Tucciarone also opined Plaintiff would need to shift positions at will. *Id*.; *see also* T. 15, 19. The ALJ was "not persuaded" by that opinion and also did not adopt PA Tucciarone's opinion regarding Plaintiff's ability to remain on task and maintain attendance. T. 19; *see also* T. 1060. However, these opinions were not related to Plaintiff's right ankle impairment as the PA explained that such limitations resulted from Plaintiff's "seizures/migraines" which "are persistent," T. 1059, and cause symptoms of "headaches, dizziness, visual disturbances, off balance." T. 1057.

Thus, based upon the records, the Court finds the ALJ's conclusion that Plaintiff's right ankle impairment was not severe because "she sought treatment and received surgery for which she recovered within twelve months" is not supported by substantial evidence in the record, nor can the Court glean from the record that the RFC is based upon substantial evidence. T. 15. Plaintiff first complained of right ankle pain in January of 2022 and treatment of weight loss was discussed. T. 779. Dr. Fkiaras' examination of Plaintiff was conducted in April of 2022. T. 785-89. He noted significant problems with her right ankle and opined moderate to marked limitations in standing for extended periods, and for walking, and climbing stairs as of April 18, 2022. T. 788-89. He also opined Plaintiff had marked limitations in squatting. T. 789. Further, records throughout the relevant period from November 1, 2020, the alleged onset date, to the last date insured through March 31, 2024, T. 14, show increasing pain and instability of the right ankle for which conservative treatment was initially instigated and the treatment ultimately culminated in right ankle surgery in March of 2023. T. 796, 840, 943, 970, 983, 987, 1006,

14

1011, 1023. Post-operative records show she was healing from the surgery, *see* T. 938, 940, but by May 10, 2023, she was still not totally healed as evidenced by her surgeon recommending only partial weight bearing, the wearing of a CAM boot, and the use of a crutch. T. 937.

      Plaintiff's treatment for her right ankle began over a year before her surgery, and she was still only on partial weightbearing approximately six weeks after her surgery. The ALJ did not point to any evidence that Plaintiff had recovered from her ankle impairment within a year from her first complaints when she began conservative treatment for it, through surgery, to the point where she could perform substantial gainful activity, especially since the ALJ found Plaintiff's last date of substantial gainful activity was November 1, 2020. T. 14. Moreover, the ALJ's rejection of the Plaintiff's right ankle as severe appears to be based upon the ALJ's speculation that Plaintiff "recovered during a typical expected period," T. 15, was "recovering as expected from corrective surgery," T. 17, despite the last record from the podiatrist who performed the surgery indicated Plaintiff was still only partially weightbearing, using a CAM boot, and utilizing crutches for assistance. T. 937. Thus, the Court concludes the ALJ's determination that Plaintiff's right ankle impairment was non-severe is not supported by substantial evidence. On the contrary, the record shows it was not a *de minimis* or a totally groundless claim. *Dixon*, 54 F.3d at 1030; *Melendez*, 2020 WL 4274510, at *2.

      Although an error at step two may sometimes be deemed harmless, the Court cannot conclude that this is the case here because it is not clear from the ALJ's decision that she considered the functional effects of Plaintiff's right ankle impairment at subsequent steps of the sequential evaluation, particularly because Plaintiff was not fully healed from her surgery in May of 2023. *See Trombley v. Berryhill*, No. 1:17-cv-00131-MAT, 2019 WL 1198354, at *6 (W.D.N.Y. Mar. 14, 2019); *Snyder v. Colvin*, No. 5:13-cv-585 (GLS/ESH), 2014 WL 3107962,

at *5 n.12 (N.D.N.Y. July 8, 2014) ("It is important to note that the mere fact that [the] sequential evaluation proceeds beyond Step 2, does not, *ipso facto*, render a Step 2 error harmless. This harmless error construct is valid only when administrative law judges faithfully execute their responsibilities to consider *functional effects* of all impairments in subsequent steps.") (emphasis in original). As noted above, while a moderate to marked limitation does not necessarily preclude the performance of light work, the ALJ must provide some explanation for how she determined the moderate to marked limitations were consistent with the RFC. *Jeffery A.*, 2020 WL 1234867, at *9.

Here, the ALJ's RFC finding indicates Plaintiff may sit for six hours and stand and/or walk for six hours in an eight-hour workday, and she can frequently balance, stoop, kneel, crouch, and crawl. T. 15. The ALJ provided no explanation for how the RFC finding is consistent with or supported by Dr. Fkiaras' assessment of moderate to marked limitations in these activities, and Dr. Fkiaras' assessment was adopted by Dr. Brauer whose opinion the ALJ found persuasive. As noted, the ALJ rejected PA Tucciarone's opinion that Plaintiff would need to shift positions at will throughout the workday. T. 19; *see also* T. 1058. However, the ALJ rejected this opinion without addressing Dr. Hurley's examination showing right ankle swelling, decreased range of motion, and deformity which resulted in surgery from which the Plaintiff had not fully recovered when the ALJ determined the right ankle impairment was not severe. The Court is accordingly unable to determine whether these conclusions are supported by substantial evidence. *See J.M.G. v. Saul*, No. 6:19-CV-1363 (LEK), 2021 WL 4477020, at *7 (N.D.N.Y. Sept. 30, 2021) ("[I]t is the ALJ's responsibility to build an accurate and logical bridge from the evidence to his conclusion to enable meaningful review.") (citation and original alteration omitted). Remand for further administrative proceedings is therefore required. Vocational

testimony should be obtained on remand to determine whether light work could still be performed considering Plaintiff's right ankle impairment during the relevant period.

## VII. CONCLUSION

**WHEREFORE**, after carefully reviewing the record, the parties' submissions, and the applicable law, and for the reasons stated herein, it is hereby

**RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) be **GRANTED**, Defendant's motion for judgment on the pleadings (Dkt. No. 13) be **DENIED**, and the Commissioner's determination be **REVERSED** and **REMANDED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: September 10, 2025
       Syracuse, New York

*[signature]*
Thérèse Wiley Dancks
United States Magistrate Judge